**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STANISLAV YELIZAROV, # 425-555, SID
  # 3031079,                            *

Plaintiff                                *

v                                  *     Civil Action No. ELH-18-1353

STEPHEN T. MOYER, Secretary, Department *
  of Public Safety and Corr. Services,
CSO III DANTE SISON,            *
LT. EVAN WARD, and
WARDEN RICKY FOXWELL,       *

Defendants[1]                   *

### MEMORANDUM OPINION

Self-represented plaintiff Stanislav Yelizarov, confined at the Eastern Correctional Institution ("ECI"),[2] has filed suit under 42 U.S.C. § 1983, alleging the violation of his civil rights because his personal property was confiscated and later destroyed after his transfer in 2017 to the Maryland Correctional Training Center ("MCTC")[3] to ECI. ECF 1. He also claims that the confiscation violated the Division of Correction ("DOC") Inmate Property and Clothing policy, set forth in 12.02.17 of the Code of Maryland Regulations ("COMAR"), Handling and Storage of

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names, as reflected in the caption above.

[2] ECI, located in Westover, is Maryland's largest prison facility, housing up to 3,300 medium security inmates and an additional 560 minimum security inmates in its Annex. *See* https://en.wikipedia.org/wiki/Eastern_Correctional_Institution (last reviewed June 13, 2019).

[3] MCTC, located in Hagerstown, Maryland, is a mixed custody facility housing approximately 2,730 minimum and medium security and pre-release inmates. While there, inmates can earn a GED and take vocational courses in electrical wiring, carpentry, engine and auto body repair, plumbing, masonry and office technology and participate in the correctional enterprises program. *See* http://www.prisonpro.com/content/maryland-correctional-training-center (last reviewed June 13, 2019).

Inmate Property.[4]  Yelizarov does not seek compensation for his lost property.  Instead, he asks this Court to enter a declaratory judgment mandating that "a matter of record" be "established before an administrative law judge" at the Inmate Grievance Office ("IGO").  ECF 1 at 4.[5]  Plaintiff submitted several exhibits with ECF 1.

In a supplement to the Complaint (ECF 4), Yelizarov states, under oath, that defendant Dante Sison destroyed his property during the pendency of an appeal of his Administrative Remedy Procedure ("ARP"), a grievance that, in this instance, concerned his entitlement to the property.[6]  He also states that defendant Evan Ward, the ARP Coordinator, conducted a "fictitious investigation" into Yelizarov's grievance.  *Id.*  Further, Yelizarov alleges that defendant Ricky Foxwell, who was then the Warden of ECI, "allow[ed]" his officers to violate inmate rights and failed to punish "negligent" employees.  *Id.*

In response to the Complaint, defendants moved to dismiss or, in the alternative, for summary judgment.  ECF 18.  The motion is supported by a memorandum (ECF 18-1) (collectively, the "Motion") and affidavits and exhibits, including an audio recording of an

---

[4] The policy is set forth as Executive Directive OPS 220.004 and attached as ECF 18-2 at 2-26 (effective December 30, 2016).

[5] In this Memorandum Opinion, I cite to the pagination assigned through the Court's electronic docket.

[6] The Maryland Department of Public Safety and Correctional Services ("DPSCS") has established an ARP process for use by Maryland prisoners for "inmate complaint resolution."  *See* generally Md. Code (2008 Repl. Vol.), §§ 10-201 *et seq.* of the Correctional Services ("C.S.") Article; COMAR 12.07.01.01B(1).  The procedure extends to grievances against employees of the Division of Correction.  C.S. § 10-206(a).

The inmate may file a grievance with the IGO.  Grievances that are not administratively dismissed for procedural or substantive reasons are heard before an administrative law judge ("ALJ") at the Office of Administrative Hearings.  *See*  https://www.dpscs.state.md.us/agencies/igo.shtml (last reviewed June 13, 2019).

adjustment hearing held on July 12, 2017. ECF 18-3.[7] Yelizarov was advised of his right to respond and to oppose the dispositive motion (ECF 19), and he has done so. ECF 20. Additionally, Yelizarov filed a Motion to Subpoena Video Camera Footage (ECF 21), which defendants oppose. ECF 24. Yelizarov replied. ECF 25.

No hearing is needed to resolve the motions. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Yelizarov's Motion to Subpoena Video Camera Footage is DENIED and defendants' Motion, construed as both a motion to dismiss and a motion for summary judgment, is GRANTED.

## I. Factual Background

On June 1, 2017, Yelizarov was notified by Sison that certain personal property in Yelizarov's possession while he was housed at MCTC could not be kept at ECI. ECF 18-2 at 27. Some items exceeded the quantity permitted under the allowable property matrix, while others were not allowed at all, or were not permitted because they had not been purchased through the prison commissary, or were not the proper color. Thus, the items were considered contraband and confiscated.

Plaintiff signed the confiscation notice two times. *Id.* at 34. The first appears to be in June 2017. The second occurred on July 18, 2017, under the following handwritten statement: "Send an appeal to the commissioner waiting for the response." *Id.*

The confiscated items included the following, ECF 1 at 6-7; ECF 18-2 at 27, 34-35:

1. Two (2) long sleeves T-Shirts;
2. Two (2) cargo shorts;
3. One (1) Altus Belt (back support – hold for medical paper from ECI medical);

---

[7] Yelizarov was permitted to review the audiotape on November 13, 2018, and was permitted to take it to his cell for further review. ECF 22-1, Decl. of Charlie Balam, Correctional Case Management Supervisor.

4. Five (5) mechanical pens (non-commissary items);
5. One (1) permanent marker (non-commissary items);
6. One (1) black Sony headphones;
7. One (1) Norelco rechargeable trimmer;
8. Two (2) sweatshirts with hoods;
9. One (1) Jordan Shorts – black and white (white gray or combination of white/gray only);
10. One (1) shorts with black markings;
11. One (1) universal adaptor;
12. One (1) port authority white polo shirts with buttons;
13. One (1) gray sweatpants with pockets;
14. One (1) buffalo jeans (with embellishment on back pockets);
15. One (1) Levis jeans (color not allowed);
16. One (1) black house slippers (non-commissary items);
17. Two (2) tanktops;
18. Two (2) colored boxers;
19. Two (2) excess prayer rugs;
20. Two (2) personal blankets;
21. Three (3) bags – green and blue (non-clear bags); and
22. One (1) altered white t-shirt.

The confiscation notice is a form, and it contains a place to designate the address to which items are to be mailed. ECF 18-2 at 34. Notably, that portion of the form is circled but no address is specified. *Id.*

Possession of these items led to a charge against Yelizarov for a violation of prison to Rule 406, relating to possession of contraband. An adjustment hearing was held on July 12, 2017, conducted by Hearing Officer Dehavilland Whitaker. Plaintiff argued that "grandfathering" provisions permitted him to retain or store the property at ECI.

The Hearing Officer's notes reflect Yelizarov's testimony that he was instructed by Sgt. Muncey that under the "grandfathering" clause several of his items could properly be stored at MCTC but that when he was transferred, those items could be stored only if they were permitted at ECI, the receiving institution. ECF 18-2 at 29. The Hearing Officer also noted Yelizarov's testimony that he had not been called to the property room by Sison on June 1, 2017, and that Sison

"never gave me a chance to say 'send these items home' that I know I am not allowed to have." *Id.*

The Hearing Officer found that Yelizarov was entitled to keep a pair of Levi denim jeans and Sony headphones. ECF at 5; ECF 18-2 at 28-30; ECF 18-3, audiotape at 27:00 to 28:20.[8] Plaintiff was found not guilty of a violation of Rule 406. ECF 18-2 at 29. No appeal was taken by plaintiff.

Executive Directive OPS.220.0004F(12) requires that disposition of property "held as part of a pending disciplinary action or criminal proceeding . . . shall be delayed [for disposition] until after the action or proceeding is completed, including appeals." Under Executive OPS.220.0004.F(7), if an inmate "establishes ownership" of "personal property" that is considered "contraband only because it is not authorized by the managing official, or exceeds the limitation on authorized personal property and may be legally possessed outside of a correctional facility, facility staff shall arrange with the inmate and, if necessary at the inmate's expense, for the item to be sent to a destination determined by the inmate." If an inmate is indigent, in some circumstances, the facility is to pay the cost of mailing the property. If an inmate who is financially able to pay refuses to pay or if any inmate refuses to provide a mailing address, the staff is permitted to dispose of the property. OPS 220.0004F(7)(b). As noted, the confiscation notice does not reflect an address for mailing plaintiff's items.

On December 1, 2017, Sison issued a Memorandum to Assistant Warden Walter West, seeking permission to destroy the confiscated property, which had been held for more than six

---

[8] It is undisputed that during the hearing it was agreed that if the headphones later became inoperable, they would be replaced with clear headphones with a visible encasement. ECF 18-2 at 30.

5

months.  ECF 18-2 at 31.  Permission was granted and all the items, including the denim jeans and the Sony headphones, were destroyed on December 4, 2017.  *See* ECF 18-1 at 7

Yelizarov contends that he was not provided with an opportunity to send his property home prior to and after the hearing on July12, 2017.  He also claims that the two Matters of Record ("MORs"), attached to Sison's Memorandum to West of December 1, 2017, are false.  One MOR is dated September 1, 2017 (ECF 18-2 at 32), and states that Yelizarov was given "multiple chances" to send the property home after the confiscation on June 1, 2017, and he was also informed that possession of the property was not "grandfathered."  *Id.*  But, the MOR states that Yelizarov "refused" to provide a mailing address for the property, leading to the issuance of the infraction for possession of contraband.  *Id.* at 32.

The other MOR is dated September 7, 2017.  *Id.* at 36.  It states that on August 24, 2017, Sison, in the presence of Ward, offered Yelizarov the pair of jeans and headphones.  But, it indicates that Yelizarov refused because he wanted all of his property returned to him.  *Id.*

Yelizarov filed multiple ARP grievances concerning the confiscation and destruction of his property.  On June 3, 2017, he filed ARP No. ECI-1396-17, alleging that Officer Sison's confiscation of his property violated Executive Directive OPS.220.0004. *Id.* at 37-39. Yelizarov argued that he was entitled to keep his personal property, as these items were purchased when he was housed at MCTC.  *Id.*  On June 5, 2017, ARP No. ECI-1396-17 was dismissed for procedural reasons, to allow additional information to be provided prior to investigation of the request. *Id.* at 37.  Yelizarov was required to resubmit his ARP by June 20, 2017, along with proof of purchase and ownership paperwork for all items listed. *Id.*

On June 8, 2017, one day before plaintiff was charged with the rule violation, and nearly five weeks prior to the adjustment hearing on July 12, 2017, plaintiff resubmitted ARP No. ECI-1396-17, along with proof of ownership for the personal property he was claiming. *Id.* at 38-42.

The ARP was again dismissed, based on a determination that the property confiscation complied with OPS.220.0004. *Id.* at 39. Further, the ARP decision noted that Yelizarov had appeared at an adjustment hearing before Hearing Officer Whitaker, was awarded the headphones and jeans, and expressed his understanding at the hearing that he could not retain the other property and wanted to donate it. The ARP findings concluded that Yelizarov refused to accept the jeans and headphones that had been awarded. *Id.* The dismissal of the ARP was deemed procedural on the basis that inmates may not use the ARP process to grieve disciplinary proceeding procedures and decisions. *Id.* at 44.

On June 19, 2017, Yelizarov filed his second ARP, No. ECI 1533-17, claiming that the dismissal of ARP No. ECI 1396-17 was due to collusion between Sison and the ARP Coordinator. *Id.* at 49-50. Yelizarov questioned why Sison took eight days after the confiscation of his property on June 1, 2017, to write an adjustment ticket, and he reiterated that his property should be returned under a grandfather clause. *Id.* The ARP was dismissed that same day for procedural reasons, on the basis that inmates may not resolve disciplinary proceedings and decisions through the ARP process. *Id.* at 49.

In the meantime, on September 9, 2017, Ward prepared and submitted an Administrative Remedy Procedure Case Summary dated August 24, 2017, for ARP No. ECI 1396-17. *Id.* at 46-48. In that summary, Ward made specific findings that Yelizarov had been afforded the opportunity to send his property out of ECI, but declined. *Id.* Ward found that Sison followed directions from headquarters staff and the chief hearing officer that if an inmate is contesting

property forfeiture through an ARP, an adjustment ticket should be written against the inmate. *Id.* at 46, ¶ 5. Ward recommended the dismissal of ARP No. ECI-1396-17 because the property was properly confiscated in accordance with OPS.220.0004. *Id.* at 48.

The ARP Case Summary included a section titled "Action to be Monitored for Compliance (in applicable)." *Id.* at 48. It said: "The property will continue to be held in property room for 120 days (starting 6-1-17 ending 9-28-17), to afford [plaintiff] the opportunity to use the ARP appeal process." *Id.* It also stated that on September 28, 2017, Yelizarov "will be afforded the opportunity to mail said property out of institution at his expense or donate said property. If he refuses to do so, the property will be marked for destruction and forwarded to the managing official as directed in OPS.220.0004." *Id.*

On October 12, 2017, Yelizarov filed ARP No. ECI 2647-17, alleging that Ward dismissed the previous ARPs without reason. *Id.* at 51-52. Further, he alleged that Ward asked him to sign off his property and threatened that if Yelizarov did not do so, Ward would further investigate the issue, which would take more than 60 days to resolve. *Id.* at 52; ECF 1 at 5, ¶ 5. Yelizarov stated that there is no issue to investigate because he was found not guilty in the adjustment hearing. *Id.* ARP No. ECI 2647-17 was dismissed on October 16, 2017, for procedural reasons, because it had not been received within the established time frame. *Id.* at 51.

Yelizarov appealed ARP No. ECI 2647-17 and ARP No. ECI 1396-17 on October 27, 2017. *Id.* at 53-54. He claimed that Ward initially refused to return his headphones and jeans and only when Ms. Sessions of the Commissioner's Office called ECI did Ward offer to return the items. *Id.* at 54.[9] Yelizarov asked for the return of his other personal property, including two gray

---

[9] This statement supports in part Sison's MOR of September 7, 2017, which indicated that Sison and Ward offered Yelizarov the jeans and headphones on August 24, 2017.

long sleeve T-shirts, two shorts, one back support belt, one polo shirt (white long sleeve), two denim blue jeans, two tank tops (white), two prayer rugs, two blankets (tan), Sony Headphones, Norelco Trimmers, and a Universal Adaptor that came with a CD player. *Id.*

A. Lovett, an ARP/IGP Coordinator, informed Yelizarov that same day, October 27, 2017, that his appeal could not be processed because his intent was not clear, the proper forms had not been used, and a separate appeal form is required for each ARP. *Id.* at 55. Yelizarov was also advised that his appeal must be "brief, clear, and concise." *Id.* (Boldface omitted).

On December 11, 2017, one week after plaintiff's property was destroyed, Yelizarov filed another appeal of the same grievances, ARP Nos. ECI 1396-17 and ARP 2647-17, again alleging he was entitled to grandfathering because he had been given permission to have the property while at MCTC. *Id.* at 56. On December 12, 2017, Lovett issued a Memorandum, advising Yelizarov: "The established timeframe to appeal the warden's decision . . . has passed." *Id.* at 57. He also stated that the grievance would not be addressed at the commissioner's level. *Id.*

In a letter of December 28, 2017, Dayena Corcoran, Commissioner of the Maryland Division of Correction, wrote a letter to plaintiff, summarizing the investigation of the confiscation of his property on June 1, 2017. ECF 1 at 11. The Commissioner noted that, following the "forfeiture hearing" on July 12, 2017, it was determined that plaintiff's blue jeans and headphones would be returned to him. *Id.* However, he pointed out that Yelizarov "refused to accept" the items because he "wanted all of [his] property returned." *Id.*

Yelizarov appealed the dismissal of ARP No. ECI-1396-17 to the IGO on January 16, 2018. ECF 18-4, Decl. of Samiyah G. Hassan, ¶ a. On March 20, 2018, plaintiff's appeal was "administratively dismissed by the IGO . . . for failure to state a claim [for] which administrative relief can and should be granted." *Id.*

On these facts, defendants Moyer and Foxwell argue that they are entitled to a dismissal, because they played little or no direct role in the events leading to the destruction of Yelizarov's property. Further, defendants provide evidence indicating that Yelizarov received sufficient notice that his property was contraband and that most of it would be destroyed or donated if Yelizarov did not provide a mailing address indicating where the property could be sent. They also provided an audio transcription of Yelizarov's adjustment hearing, at which Yelizarov agreed to donate all of his property, with the exception of the Levi jeans and Sony headphones.

Defendants also argue that the loss of property or the violation of Maryland regulations or policies is insufficient to support plaintiff's civil rights claim under § 1983. They provide the relevant Executive Directive, OPS.220.000 – Inmate Personal Property, to explain the actions taken. *See* ECF 18-2 at 1, "Records Declaration" of Ebone' Janifer; ECF 18-2 at 2-26, Executive Directive, effective December 30, 2016.

## II.     Standard of Review

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours &*

*Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 573; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). But, the Supreme Court has explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted; alteration in *Twombly*).

Moreover, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint

without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines*, 822 F.3d at 167. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.* (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543

U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## B.

As noted, the Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

As indicated, a court ordinarily "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Notably, summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds

that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that

the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. Appx. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

Yelizarov has not filed an affidavit under Rule 56(d). Nonetheless, he opposes defendants' Motion and has filed a motion seeking video camera footage (ECF 21), which defendants state does not exist. *See* ECF 24. Defendants have provided Yelizarov with an opportunity to hear and possess the audio transcription of his adjustment hearing. ECF 22.

According to plaintiff, video recordings of activity in ECI-West on September 28, 2017, would show that he was not given a final chance that day to send his property home. ECF 21. Defendants argue that Yelizarov was given opportunities on previous dates to send his property home, but he refused. ECF 24, ¶ 1. They also provide a Declaration stating that there is no video recording of activity on September 28, 2017, between corrections personnel and Yelizarov relating to Yelizarov's personal property or his chance to send his property home. ECF 24, ¶ 2; ECF 24-1, Shumaker Decl. ¶¶ 1-2. Yelizarov counters by stating that cameras are operated at all times in the property room; had he been ordered to report there, a video would show his presence on the date in question. He also states that he was not called to the property room on September 28, 2017, and had he refused an order directing him there, he would have been charged with an institutional infraction. ECF 25.

The parties' differing version of the events occurring on September 28, 2017, is not material to the resolution of this case. With the exception of the Levi jeans and Sony headphones,

the disposition of Yelizarov's property occurred after his adjustment hearing, at which he relinquished ownership of the property and agreed to donate it.

Thus, the Court is satisfied that it is appropriate to address a portion of the Motion as a motion for summary judgment, and a portion as a motion to dismiss.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the

nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most

favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

## III. Discussion

### A. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal

conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B. Defendants Moyer and Foxwell

With regard to defendants Moyer and Foxwell, I shall construe the Motion as one to dismiss.

As noted, the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane*, 355 F.3d at 782 (no respondeat superior liability under § 1983). But, as a review of plaintiff's submissions demonstrate, plaintiff does not allege facts to show a basis for liability. In particular, there are no facts alleged that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d at 799.

Therefore, defendants Moyer and Foxwell are entitled to dismissal.

### C. Defendants Sison and Ward

The United States Supreme Court has determined that claims of negligent deprivation of property by a prison official do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986). A claim of intentional deprivation of property by a prison official also would not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tydings v. Dep't of Corrections*, 714 F.2d 11, 12 (4th Cir. 1983) (finding that Virginia law provides for an adequate post-deprivation remedy).

In Maryland, interference with a person's right to property, without the owner's consent and without lawful justification, is known as the tort of conversion and is actionable under Maryland law. *See generally Dungan v. Mutual Benefit Life Ins. Co.,* 38 Md. 242, 249 (1873). The right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an

adequate post-deprivation remedy for inmates in Maryland prisons. *See Juncker v. Tinney*, 549 F.

Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state

court is adequate."); *see also Hawes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060 at *4 (D.

Md. May 25, 2018) (noting that the Maryland Tort Claims Act and the IGO provide adequate post-

deprivation remedies); *Fuller v. Warden*, No. WMN-12-43, 2012 WL 831936 at *2 (D. Md. Mar.

8, 2012).

Plaintiff was afforded ample opportunity to challenge the confiscation and forfeiture of his

properties, and prevailed as to two items. But, he refused to accept these items unless all of his

personal property was returned. Yelizarov's claim that his personal property was intentionally

destroyed does not, without more, state a constitutional claim for relief. *See Young-Bey v. Miller*,

No. JKB-16-3435, 2018 WL 4108076 at *4 (D. Md. Aug 29, 2018) (concluding that a claim that

personal property was destroyed did not assert a constitutional violation); *Hawes*, 2018 WL

2389060 at *4 (D. Md. May 25, 2018) (dismissing an inmate's property loss claim for failure to

state a cognizable constitutional claim); *Fuller v. Horning*, No. WMN-11-1917, 2012 WL

2342947, at *7 (D. Md. June 19, 2012) (stating that "removal of property from a prisoner simply

does not state a constitutional claim"), *aff'd,* 504 F. App'x 218 (4th Cir. 2013).

Read broadly, the facts asserted fairly imply a procedural due process claim, based on

Yelizarov's argument that the confiscation was improper based on state regulations and prior

assurances that "grandfathering" permitted him to retain property upon transfer to ECI. In the

prison context, however, "the adoption of procedural guidelines does not give rise to a liberty

interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due

process." *Kitchen v. Ickes*, 116 F.Supp.3d 613, 629 (D. Md. 2015) (citing *Culbert v. Young*, 834

F.2d 624, 628 (7th Cir. 1987)), *aff'd*, 644 F.App'x 243 (4th Cir. 2016); *see also Riccio v. County*

*of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) (noting "a state does not necessarily violate the Constitution every time it violates one of its rules"). Further, "[r]egardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minimal requirements are met." *Kitchen*, 116 F.Supp.3d at 629 n.6 (citing *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

In any event, the regulations concerning personal property, outlined in OPS.220.0004 and provided at ECF 18-2 at 2, *et seq.*, appear reasonably related to a legitimate penological interest. *See Turner v. Safley,* 482 U.S. 78 (1987). And, they appear to have been followed here. Even if they were not, plaintiff's due process rights were not implicated. *See Riccio v. Fairfax County, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990).

As a prisoner, Yelizarov has a constitutional right to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 540, 564, 570-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). The mere fact that a DOC rule governing adjustment hearings was violated does not necessarily amount to a due process violation. *Riccio*, 907 F.2d at 1466 (noting that "a state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1993) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due."). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when

unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review its accuracy.

Yelizarov's claim that prison officials did not fully follow the Executive Directive regarding disposition of personal property likewise does not rise to a § 1983 claim where, as here, he was afforded sufficient due process. *See, e.g., Holcomb v. Lykens,* 337 F.3d 217, 223-24 (2d Cir. 2003) (revocation of furlough without following correctional manual procedure did not violate due process where procedures followed satisfied due process, including written notice, a hearing, and written findings based on the evidence); *Riccio,* 907 F.2d at 1466 (existence of state rule does not necessarily create due process interest). Yelizarov's insistence that his property could be stored at ECI triggered the issuance of a rule violation permitted under OPS.220.0004. His testimony, and that of Sison, was heard by Hearing Officer Whitaker, who found Yelizarov not guilty and provided a written decision. Yelizarov did not appeal.

During the hearing, Yelizarov stated that Sison did not provide him with an opportunity to send the confiscated property home prior to issuing the notice of infraction. This statement may have played a role in Whitaker's determination that Yelizarov was not guilty of the infraction. It should be noted, however, that Yelizarov did not provide an outside address during the hearing, although he was informed at the hearing that his property could be sent outside were he willing to do so. ECF 18-3, audio recording of hearing at 11:30-11:35.[10]

---

[10] The quality of the recording is poor. However, the Hearing Officer prepared notes with regard to the hearing and referenced those notes in the written decision. ECF 18-2 at 28-30.

Most significant, however, is the dialogue between Yelizarov and the Hearing Officer, which establishes that Yelizarov clearly understood that he had the opportunity to provide a mailing address for his property. Yelizarov expressed his understanding, carefully articulated by Whitaker, that he could retain his Levi jeans and headphones, and that "everything else" could be sent home or destroyed or donated. Given those options, Yelizarov waived the opportunity to provide an address and instead opted to keep the Levi jeans and headphones while donating "everything else."

Now, however, Yelizarov implies that in the months after the adjustment hearing, Sison obtained permission for destruction of the property, including the jeans and headphones that had been awarded to Yelizarov by Whitaker, and falsely indicated that Yelizarov was provided multiple opportunities to accept the jeans and headphones and provide an outside address for the remaining property. Yelizarov implies this destruction, which occurred in December 2017, was retaliatory and therefore in violation of *Booker v. South Carolina Department of Corrections,* 855 F.3d 633, 641-42, *cert. denied*, 138 S. Ct. 755 (2018). *See also Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977); *Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008); *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (*en banc*).

As noted above, Yelizarov chose to donate most of his property. By relinquishing an ownership interest in that property, Yelizarov forfeited any right to protest its ultimate disposition. At most, Yelizarov's claim that his property was wrongfully destroyed is limited to the disposition of the Levi jeans and Sony headphone, items for which ownership interest was established at the adjustment hearing.

To establish a retaliation claim, Yelizarov must establish three elements: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, *i.e.*, his protected conduct motivated at least in part the adverse action. *See Thaddeus-X.*, 175 F.3d at 394. Although retaliation is not expressly referred to in the Constitution, it is nonetheless actionable because such conduct tends to chill an individuals exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) (recognizing that government may not deny a benefit on a basis that infringes a constitutionally protected interest). If there is no impairment of a plaintiff's rights, however, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *Id.* at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).

To state a prima facie claim of retaliation, Yelizarov has the burden of setting forth facts that would show that retaliation for the exercise of protected conduct (grieving the forfeiture of his property) was the "substantial" or "motivating" factor behind defendants' allegedly improper conduct of destruction of the jeans and headphones. *Mt. Healthy,* 429 U.S. at 287 (1977). If Yelizarov makes a prima facie showing, the burden shifts to defendants to demonstrate that they would have reached the same decision, even in the absence of Yelizarov's constitutionally protected conduct. *Id.* Additionally, Yelizarov must demonstrate that the protected activity was the "but for" cause of the adverse action alleged. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006) (employment discrimination). Causation can be inferred when the adverse action occurs close in time to the plaintiff's protected activity. *See Foster v. Univ. of Maryland E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015). Defendants can, however, offer legitimate

and permissible reasons for their action to refute the plaintiff's evidence. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016).

Sison's signed MOR reflects that Sison and Ward attempted to return the jeans and headphones to Yelizarov on August 24, 2017, but it was rejected by Yelizarov unless all property, including that which had been forfeited, was provided. Although the 120-day period expired in early September 2017, Yelizarov's property, including the jeans and headphones, were retained at ECI for an additional 60 days before the property was destroyed, and that occurred in a manner consistent with prison directives.

Yelizarov has not established that "but for" Sison and Ward's conduct, his jeans and headphones would not have been destroyed. Nor does he refute the role his own conduct played in the loss of those items. In short, Yelizarov fails to establish impermissible retaliation as the factor that led to his property loss.

## IV.    Conclusion

Defendants' Motion is granted; Defendants Moyer and Foxwell are dismissed, and Defendants Sison and Ward are granted summary judgment. A separate Order follows.


Date:   July 1, 2019                      _____/s/_____
                                          Ellen L. Hollander
                                          United States District Judge